# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **S.B. and A.W.**

**No. 17-0220** (Kanawha County 16-JA-433 & 16-JA-434)

**FILED**

**June 16, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.W., by counsel Rick F. Holroyd, appeals the Circuit Court of Kanawha County's February 9, 2017, order terminating his parental rights to S.B. and A.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Michael L. Jackson, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer N. Taylor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that (1) he failed to improve during the proceedings and (2) the DHHR provided reasonable services.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2016, the DHHR filed an abuse and neglect petition against petitioner and the mother. According to the petition, a family court previously granted custody of the children

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, although the record indicates that petitioner is not the biological father of A.W., he presents assignments of error addressing both children in his petition for appeal. Moreover, the circuit court's order does not clearly delineate what rights, if any, petitioner possessed in regard to A.W., as that child's stepfather. However, the circuit court's dispositional order, in several instances, addresses petitioner in relation to both children. For example, the dispositional order states that "[petitioner is] presently unwilling or unable to provide adequately for the children's needs." The circuit court ultimately stated only that "the parental rights of . . . [petitioner] are hereby permanently **TERMINATED**." Because it is unclear whether the circuit court terminated petitioner's parental rights to S.B. alone or if it terminated petitioner's rights to both S.B., as her biological father, and his rights to A.W., as her stepfather, and out of an abundance of caution, this memorandum decision affirms the circuit court's findings in their entirety as they relate to both children.

1

to their maternal grandmother as a result of allegations of abuse and neglect before the family court that resulted in a referral of the matter to the circuit court. According to the guardian, the family court proceedings documented extensive DHHR involvement with the parents, as evidenced by multiple case plans, safety plans, and other records that reflected several years of DHHR services designed to remedy the conditions in the home. The petition further alleged that the DHHR's subsequent investigation of the home revealed the parents' physical and mental abuse of the children. At the subsequent preliminary hearing, the circuit court ordered psychological evaluations and counseling for the parents and the children.

In September of 2016, the circuit court held an adjudicatory hearing, during which a Child Protective Services ("CPS") worker testified that ten-year-old S.B. told him that petitioner once shocked her with a Taser. The child recalled specific details of the event, including the location, a description of the Taser, and the fact that the parents later activated the Taser in front of the children as a threat to get them to behave. The CPS worker also testified to the children's statements regarding the various forms of punishment petitioner subjected them to, including forcing the children to lie on their stomachs while petitioner struck their feet with a hairbrush; forcing the children to stand with a bar extended over their heads for long periods; and dragging the children by their hair. The CPS worker further testified that both children expressed fear of the Taser being used on them. According to the CPS worker, the parents denied the allegations, although they confirmed they owned a Taser. The CPS worker also testified that the children confirmed these allegations in counseling sessions with a therapist. Another CPS worker testified to the fact that S.B. refused to participate in visits with petitioner because she feared him, in addition to the therapist's recommendation to stop the visits. Petitioner testified and denied the allegations. The circuit court also heard from the children's maternal grandmother, who testified that she filed a petition for temporary custody in the family court after the children informed her of the parents' abuse. Ultimately, the circuit court found that petitioner abused and neglected the children. The circuit court further barred petitioner from visits with the children until he completed treatment, as recommended by a psychiatrist. Petitioner thereafter moved for a post-adjudicatory improvement period.

In December of 2016, the DHHR submitted a court summary that indicated that petitioner had not yet contacted the DHHR to initiate any services. The following month, the guardian filed a report that noted petitioner's psychological report stated that he failed to accept responsibility for his actions. The psychological report also included a poor prognosis for petitioner, given that it was "unlikely that any type or amount of intervention would reliably reduce [his] risk of future child maltreatment."

In January of 2017, the circuit court held a dispositional hearing, during which both the DHHR and the guardian recommended termination of petitioner's parental rights. The DHHR reiterated that petitioner failed to contact the DHHR to initiate services, including parenting and reunification therapy. Petitioner also failed to request any additional services. Additional testimony established that both children indicated that they did not want to participate in visits with petitioner. Ultimately, the circuit court denied petitioner's motion for a post-adjudicatory

improvement period and terminated his parental rights to the children.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, the Court finds no error in the circuit court's ruling that petitioner failed to show improvement in his ability to properly parent the children during the proceedings below. In support of this assignment of error, petitioner argues that the circuit court's denial of visitation prevented him from establishing his bond with the children. Petitioner additionally argues that it was unreasonable to require him to obtain treatment prior to receiving visitation with the children because of the short timeframe of the case. Moreover, petitioner argues that the DHHR's failure to provide him with services prevented him from establishing improvement. According to petitioner, the circuit court's finding was erroneous, and he should have been entitled to a formal improvement period. We do not agree.

The record is clear that visitation was denied because it was not in the children's best interests. While petitioner argues that he should have received visitation in order to establish his ability to parent the children, "'the best interests of the child is the polar star by which decisions must be made which affect children.' *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citation omitted)." *Kristopher O. v. Mazzone*, 227 W.Va. 184, 192, 706 S.E.2d 381, 389 (2011). Here, the children's therapist recommended that petitioner not visit with the children because of the detrimental effects to them. Moreover, the children themselves expressed fear over visitation with petitioner and asked not to participate. As such, it is clear that the circuit court did not err in denying petitioner visitation with the children.

---

[2]According to the parties, the parental rights of all parents to all children were terminated below. According to the guardian, the children are placed in the home of their maternal grandmother with a goal of adoption therein.

3

Further, petitioner's reliance on the DHHR's alleged failure to contact him in order to provide services is misplaced. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child .
> . . .

As is clear from this statute, petitioner was required to follow through with the services the DHHR offered. The record on appeal shows that the DHHR offered several services, including therapy and counseling. However, petitioner's failure to contact the DHHR to initiate these services precluded him from ever beginning them, let alone following through with the services such that the conditions of abuse and neglect could be corrected. As such, it is clear that the circuit court did not err in finding that petitioner failed to show improvement during the proceedings, as the record is devoid of petitioner undergoing any services designed to remedy the conditions of abuse and neglect. Moreover, this evidence also supports the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period.

Pursuant to West Virginia Code § 49-4-610(2)(B), a circuit court may grant a parent a post-adjudicatory improvement period if "the [parent] demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . ." Here, petitioner failed to comply with the minimal requirement that he contact the DHHR to initiate services. As such, the record is clear that petitioner could not establish that he was likely to fully participate with the terms and conditions of a post-adjudicatory improvement period, given his complete lack of participation in the proceedings. Accordingly, we find no error in the circuit court's denial of petitioner's motion.

Next, we find no error in the circuit court's finding that the DHHR provided reasonable services to petitioner. As outlined above, the DHHR offered petitioner multiple services, although petitioner willfully failed to contact the DHHR so that he could comply with the same. Further, in support of his assignment of error, petitioner argues that the circuit court should have required the DHHR to return the children to the home so that he could show that the allegations against him were "nothing more than allegations." However, petitioner fails to cite to any authority that would require the DHHR to return the children to his home after the circuit court adjudicated him as an abusing parent and substantiated the allegations in the petition. Moreover, as set forth above, it was established that visitation was not in the children's best interests, so it stands to reason that returning them to the home would have similarly been detrimental to their wellbeing. In fact, in its dispositional order, the circuit court specifically found that "[c]ontinuation in the home with the abusing parents is not in the children's best interests because their safety cannot be assured." As such, we find no error in the circuit court's refusal to return the children to petitioner's home.

4

Further, to the extent that petitioner argues on appeal that termination of his parental rights was inappropriate because the circuit court did not require the DHHR to provide services or grant him an improvement period, we find no error. Based, in part, on petitioner's failure to participate, even minimally, in services, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect. The circuit court further found that petitioner continued to deny the allegations at the dispositional hearing, which evidenced his refusal to accept responsibility for the abuse and neglect in the home. We have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable . . . .

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). The circuit court further found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings. Moreover, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 9, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: June 16, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

5